# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **STAR INSURANCE COMPANY,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 2:15-cv-884-DAB |
| ) | |
| **PROGRESSIVE SPECIALTY** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This matter arises from an insurance contribution declaratory judgment action in which Star Insurance Company ("Star") and Progressive Specialty Insurance Company ("Progressive") each seek reimbursement of monies paid in settlement of underlying litigation against their mutual insured, Gilow Wood, Inc. ("Gilow Wood"), for Gilow Wood's liability arising from an automobile accident. Before the Court are the parties' respective motions for summary judgment. (Docs. 21 & 23). The motions have been fully briefed and orally argued before this court. For the reasons stated herein, Star's motion for summary judgment is **DENIED**, and Progressive's motion for summary judgment is **GRANTED**.

## I. JURISDICTION

The parties bring their respective claims pursuant to 28 U.S.C. § 2201 and Rule 57, Fed. R. Civ. P., and subject matter jurisdiction is conferred by 28 U.S.C. § 1332(a)(1). The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in the Complaint (Doc. 1) and Answer and Counterclaim (Doc. 5). On March 15, 2017, the parties consented to Magistrate Judge Jurisdiction for all matters pursuant to Rule 73, Fed. R. Civ. P., and 28 U.S.C. § 636(c). (Docs. 33 & 34). On March 16, 2017, this matter was reassigned to the undersigned Magistrate Judge "to conduct all proceedings

and order the entry of a final judgment" by United States District Judge Myron H. Thompson. (Doc. 35).

II.     SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Fed. R. Civ. P. 56(e) (emphasis added). Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When opposing a motion for summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. "If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

Although there are cross-motions for summary judgment, each party must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Citizens Bank and Trust v. LPS Nat. Flood, LLC*, 51 F.Supp.3d 1157, 1168-69 (N.D. Ala. 2014); *see also Culpepper v. Inland Mortg. Corp.*, 243 F.R.D. 459, 463 n.1 (N.D. Ala. 2006) (quoting Wright, Miller & Kane, Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998)) (same).

## III. BACKGROUND AND FACTS

Gilow Wood was incorporated in Alabama in 1995. (Doc. 21-1 at 14). Although Gilow Wood was originally incorporated with a third party, at all times material to this matter, Gilow Wood was exclusively owned and operated by Charles R. Owens, Sr., and Charles R. Owens, Jr. (Doc. 21-1 at 3). "Gilow Wood is a timber dealership," (Doc. 23-4 at 4), in the business of negotiating the sale of timber from landowners to various mills, and contracting with pulpwood haulers to do the actual harvesting and hauling of the timber. (Doc. 23-4 at 16-18).

CR Owens Pulpwood, Inc., ("Owens Pulpwood") is a timber harvesting and hauling corporation owned by Charles R. Owens, Sr., and Charles R. Owens, Jr. (Doc. 23-4 at 14-15). All the timber harvesting brokered by Gilow Wood is contracted to Owens Pulpwood for harvesting and hauling, but

3

Owens Pulpwood occasionally hauls for other companies. (Doc. 23-4 at 29-30). Owens Pulpwood employs a number of workers for its hauling crew, including Larry Savage, a pulpwood truck driver. (Doc. 23-4 at 37, 66).

Star issued a Commercial General Liability policy ("the Star policy") to Gilow Wood which was in force at the time of the underlying accident. (Doc. 23-10). The Star policy included an exclusion of coverage for "Aircraft, Auto or Watercraft," ("the auto exclusion"):

> "Bodily injury" or "property damage" arising out of ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading,"
>
> This exclusion applies even if the claims against Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(Doc. 23-10 at 25). The Star policy further provides that, "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (Doc. 23-10 at 31). Neither Owens Pulpwood nor Savage are shown as Named Insureds in the Declarations of the Star policy. (Doc. 23-10 at 13-14, 21, 38).

Progressive issued a commercial auto policy ("the Progressive policy") to Gilow Wood which was in force at the time of the underlying accident. (Doc. 23-9). The Progressive policy specifically provides, under the Employer's Non-Ownership Liability endorsement, that: "This includes **autos**[1] owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or

---

[1] The Progressive policy states words and phrases in boldface type have the meanings as specially defined in the policy under a section titled "General Definitions." (Doc. 23-9 at 12). In this case, the Progressive policy provides that "'**you**,' '**your**' and '**yours**' refer to the named insured shown on the **declarations page**." (Doc. 23-9 at 15).

4

**your** personal affairs." (Doc. 23-9 at 38) (emphasis in original). The Progressive policy further provides that, "The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member which is not shown as the named insured on the **Declarations Page**." (Doc. 23-9 at 38) (emphasis in original).

On September 17, 2013, Savage was driving a pulpwood truck and trailer owned by Owens Pulpwood to a timber harvesting site in Butler County, Alabama, when the truck and trailer collided with a car being driven by Delores Smith Johnson, causing her death. (Doc. 1 at ¶¶ 23-24). The estate of Mrs. Johnson filed a complaint in the Circuit Court of Butler County, Alabama, against Owens Pulpwood and Savage, and filed a Second Amended Complaint naming Gilow Wood as a defendant. (Doc. 1 at ¶¶ 23, 25). The Second Amended Complaint added claims against Gilow Wood averring negligent failure to develop a traffic-control plan at the logging site, negligent retention of Owens Pulpwood to harvest and haul the lumber, and negligently or wantonly allowing Owens Pulpwood to haul lumber during non-daylight hours without proper equipment. (Doc. 23-8 at ¶¶ 4-20).

The underlying lawsuit was settled in 2015, in which "Star and Progressive each paid $500,000 in settlement of the claims against Gilow Wood." (Doc. 1 at ¶ 27; Doc. 5 at ¶ 27). On November 25, 2015, Star filed a Complaint in this Court seeking a declaratory judgment "that the Star Policy does not afford insurance coverage in connection with the Underlyling Lawsuit" and "that Progressive is obligated to reimburse Star for the amount it paid in settlement of the Underlying Lawsuit." (Doc. 1 at 8-9). Progressive answered the Complaint and filed a Counterclaim seeking a declaratory judgment that the loss was not covered by the Progressive policy, that the loss was covered under the Star policy, and seeking contribution against Star. (Doc. 5 at ¶¶ 30-36[2]). Both parties argue in the alternative that their coverage is excess as to the other. (Doc. 1 at 9; Doc. 5 at 33, 35).

---

[2] The Counterclaim appears to have improperly numbered paragraph 36 as "23." (Doc. 5 at 14).

The truck and trailer involved in the underlying accident were owned, operated, and maintained by Owens Pulpwood. (Doc. 23-2 at 13; Doc. 23-4 at 46; Doc. 24 at 4-5; Doc. 24-2 at 4). Gilow Wood does not own any trucks, trailers, or other equipment for hauling timber, and does not have a Department of Transportation number. (Doc. 23-4 at 9, 48). Owens Pulpwood and Gilow Wood were covered by separate workers compensation policies. (Doc. 24-2 at 14). Owens Pulpwood and Gilow Wood share the same office building. (Doc. 23-4 at 27). The two companies maintain separate bank accounts, maintain separate insurance polices, and file separate tax returns. (Doc. 23-4 at 44-45). Owens Pulpwood and Gilow Wood were incorporated separately at different times, and neither company engages in the type of business performed by the other. (Doc. 24-4 at 5, 17). Owens, Jr., testified that "Really as far as the cutting [of timber] goes, there again, I'm the one that does it for Gilow Wood and Owens Pulpwood Company." (Doc. 23-4 at 43). Savage testified that he did not know who owned Gilow Wood, and when asked about the relationship between Owens Pulpwood and Gilow Wood, he stated that "They were just the – I guess, the supplier they went through." (Doc. 23-5 at 5).

As to the financial relationship between Gilow Wood and Owens Pulpwood, Owens, Jr., testified that he and his father "try to keep them separate" and stated that on occasion, funds from one company had been lent to the other because "Owens Pulpwood Company takes on a lot more debt than Gilow Wood does during the course of the year." (Doc. 21-1 at 27). Owens, Jr., testified that financial comingling did not occur on a regular basis and that "We pretty much stand – Both of [the companies] stand on their own." *Id*. Owens, Jr., testified that "We get it paid back one way or another." (Doc. 21-1 at 28).

## IV. DISCUSSION

The material facts of this case are undisputed, and both parties have moved for summary judgment on those same facts for their respective claims and counterclaims. The parties have each argued that the insurance coverage their respective companies issued to Gilow Wood is not triggered, is excluded, or at best excess, and that the other policy's coverage is triggered and primary. At oral

6

argument, the parties each recognized and argued that the resolution of this matter hinges on whether Savage was a dual employee of Owens Pulpwood and Gilow Wood.

Star argues that:

> both Star and Progressive defended their mutual insured and participated jointly in the underlying settlement. Thus, the parties cannot dispute that the settlement was not fair and, seemingly, should not be able to argue their respective insured was not legally liable to pay damages. However, the parties each have the burden to prove that the liability of the insured is covered by the other's insurance policy.

(Doc. 23-2 at 12). Star argues that "Progressive agreed to insure Gilow Wood for liability for a 'non-owned auto,' which is defined as an 'auto that you do not own, lease, hire, rent or borrow, and that is used in connection with your business.'" (Doc. 23-2 at 13, quoting Doc. 23-9 at 38).

The Progressive policy provides coverage as a "non-owned auto" that was "used in connection with [Gilow Wood's] business." (Doc. 23-2 at 13, citing Doc. 23-9 at 38). However, the Progressive policy endorsement on which Star asserts coverage requires that the "non-owned auto" be "used in connection with **your** business." (Doc. 23-9 at 38). As stated in the General Definitions section of the Progressive policy, "**your**" refers "to the named insured shown on the **declarations page**." (Doc. 23-9 at 15). The declarations page of the Progressive policy specifically listed Gilow Wood, and names "Related drivers" as Charles Owens, Charles Owens [sic], Roger Moorer, and Thomas D. Owens. (Doc. 23-9 at 2-3). The declarations page further designated "Additional Insured information" to include Rocky Crk Lumbar Co [sic], International Paper, and Georgia Pacific LLC. (Doc. 23-9 at 4). At no point in the Progressive policy was Owens Pulpwood mentioned.

Star, however, argues that Savage was a "dual employee" of both Gilow Wood and Owens Pulpwood, specifically stating that they "had common ownership, worked in the same space, and for the same purpose: to harvest and haul timber for sale." (Doc. 23-2 at 19). There is no dispute that Gilow Wood and Owens Pulpwood had common ownership and shared a common office location. However, the evidence is equally undisputed, even in Star's own statement of the facts, that Gilow Wood and Owens Pulpwood were engaged in distinctly separate (though complementary) business activities:

7

"Gilow Wood conducted the timber dealership business, and Owens Pulpwood did the harvesting and hauling of the timber." (Doc. 23-2 at 2, citing Doc. 23-4 at 49) (Owens, Jr., testified in regard to the two entities that he preferred "Keeping it separate; the timber buying and the logging.")

Star relies on the Alabama Supreme Court's holding in *Ex parte Stewart*, 518 So. 2d 118 (Ala. 1987), for the proposition that "[a]n employer may be held vicariously liable for the negligence of its employee in the course and scope of his employment…" (Doc. 23-2 at 19). However, *Stewart* held that "Where there is evidence of a measure of control over an employee by two or more putative employers, a finding of 'control' and liability in just one of them would be obviously erroneous." 518 So. 2d at 120. Viewing the facts in the light most favorable to Progressive as the nonmoving party to Star's motion for summary judgment, "Owens testified that he alone direct the employees [of Owens Pulpwood], including Savage" and that "Savage confirmed Owens alone directed him." (Doc. 23-2 at 19). Again, viewing the facts in the light most favorable to Progressive, Owens Pulpwood was in the regular business of hauling timber, that Owens Pulpwood had a DOT number that authorized it to engage in such business, that Savage worked exclusively as a pulpwood truck and trailer driver, that Owens Pulpwood directed Savage's work, that Owens Pulpwood paid Savage with checks drawn on Owens Pulpwood's bank account, and that Savage testified that he had no idea what, if any, relationship may have existed between Gilow Wood and Owens Pulpwood. Accordingly, the undisputed facts do not indicate that Savage was an employee of Gilow Wood such that the "non-owned auto" endorsement in the Progressive policy would be triggered and provide coverage for the accident.

Progressive, on the other hand, argues that the Star policy covers the underlying accident because the auto exclusion in the Star policy "only applies if the occurrence which triggers coverage 'involve[s] the ownership, maintenance, use or entrustment to others of … 'auto' … that is owned or operated by or rented or loaned to any insured." (Doc. 24 at 11, citing Doc. 21-6 at 26). Progressive further observes "that the truck driven by Savage was not 'owned or … rented or loaned to any insured.'" (Doc. 24 at 11). Based on this observation, Progressive concludes that because "Gilow Wood

did not own, operate, rent or borrow the haul truck [that] Savage drove in the accident, … the auto exclusion is inapplicable." (Doc. 24 at 11). Progressive argues that if the auto exclusion in the Star policy does not apply, the Star policy provides coverage. (Doc. 24 at 18).

Under Alabama law,

> The test for determining whether a person is an agent or employee of another, rather than an independent contractor with that other person, is whether that other person has reserved the right of control over the means and method by which the person's work will be performed, whether or not the right of control is actually exercised. *Alabama Power Co. v. Beam,* 472 So.2d 619 (Ala.1985). How the parties characterize the relationship is of no consequence; it is the facts of the relationship that control.

*Martin By & Through Martin v. Goodies Distribution*, 695 So. 2d 1175, 1177 (Ala. 1997). It is undisputed that the two businesses had the same two owners and on rare occasions, the owners informally loaned money from one of their businesses to the other. However, the remainder of the evidence, especially as it relates to the employment of Savage, indicates that Owens, Sr., and Owens, Jr., maintained and operated the two businesses for two distinct purposes, including the retention of employees for only one of those businesses, Owens Pulpwood.

Savage testified that his only employment duty was driving the pulpwood truck. (Doc. 24-4 at 11). Savage did not assist with the cutting of the timber, and he was never engaged in searching for or purchasing timber. (Doc. 24-4 at 11-12). Savage's pre-employment paperwork indicated he was working for Owens Pulpwood, and his paychecks were all drawn on the Owens Pulpwood bank account and bore the Owens Pulpwood company name. (Doc. 24-4 at 5, 10). Savage was not even aware of the owner of the property from which he was to haul lumber on the day of the accident. (Doc. 24-4 at 8). Savage testified that after he delivered his loads of lumber to the mills, the receipts for the load always indicated that they were delivered by Owens Pulpwood. (Doc. 24-4 at 9). There is no evidence in the record of Savage being asked to or engaging in any activity of timber brokering on behalf of Gilow Wood or anyone else. Moreover, there is no evidence in the record that Gilow Wood retained any control of the method or manner in which Savage drove the pulpwood truck and trailer on the day of

9

the accident or any other time. In short, the undisputed evidence indicates that Savage was an employee of Owens Pulpwood but no evidence indicating that Gilow Wood employed Savage or otherwise "reserved the right of control over the means and method by which the [Savage's] work will be performed." *Martin*, 695 So. 2d at 1177.

Star recognized in its brief that "both policies cannot be triggered because application of the non-owned liability endorsement in the Progressive Commercial Auto Policy is the exact same as that provided by the exclusion in the Star CGL Policy." (Doc. 23-2). The Star policy's "Excess Insurance" provision would only be triggered "If other valid and collectible insurance is available to the insured for a loss we cover…" (Doc. 23-10 at 33). As stated above, the Progressive policy does not provide collectible coverage for this loss, and as a result, the Star policy was triggered and does not contain an applicable exclusion for this occurrence. Specifically, the Star policy states that it applies to "'bodily injury' or 'property damage' … caused by an 'occurrence' that takes place in the 'coverage territory' … during the policy period…" (Doc. 23-10 at 22). There is no dispute that the accident was an occurrence involving property damage and bodily injury in the coverage territory during the coverage period specified by the Star policy. The underlying claims for negligence and wantonness brought directly against Gilow Wood were covered under the Star policy but excluded by the Progressive policy.

## VI. CONCLUSION AND ORDER

For the reasons stated, it is **ORDERED:**

Progressive's motion for summary judgment (Doc. 21) is **GRANTED** as to Count I of the Counterclaim. The underlying occurrence was not covered under the Progressive policy, but the loss was covered under the Star policy. Counts II and III, which were pleaded in the alternative, are **MOOT**.

Star's motion for summary judgment (Doc. 23) is **DENIED.**


Progressive is **ORDERED** to submit a proposed form of judgment including an appropriate calculation of prejudgment interest, after conferring with opposing counsel as to form, within ten days of the entry of this order.

**DONE** and **ORDERED** this 7th day of June 2017.

David A. Baker
United States Magistrate Judge